William J. Edelman (SBN 285177)
**MILBERG, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Tel: (771) 474-1121
wedelman@milberg.com

Michael A. Acciavatti (*pro hac vice*)
**MILBERG, PLLC**
405 East 50th Street
New York, NY 10022
Tel: (212) 594-5300
macciavatti@milberg.com

*Attorneys for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AUSTIN BEAULIER, individually and on behalf of all those similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No.   3:26-cv-02632-CRB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** |
| AUSTIN BEAULIER, individually and on behalf of all those similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ROBLOX CORPORATION,<br><br>    Defendant. | Case No.   3:26-cv-02642-JSC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO CONSIDER
WHETHER CASES SHOULD BE RELATED

Plaintiff Austin Beaulier ("Plaintiff") hereby opposes Defendant, Roblox Corporation's ("Roblox") administrative motion (ECF No. 17) to reassign *Beaulier v. Roblox Corp.*, No. 3:26-cv-02642-JSC (the "Roblox Action") as a "related" case under Local Rule 3-12 to *Beaulier v. Meta Platforms, Inc.*, No. 3:26-cv-02632-CRB (the "Meta Action"). Roblox argues that the Court should grant its motion because: the Meta and Roblox Actions are substantially similar under L.R. 3-12(a)(1); and, relating these cases would promote judicial efficiency by avoiding duplication and conflicting results under L.R. 3-12(a)(2). Both arguments fail.

***First***, each case concerns distinct defendants, distinct AI systems, and distinct conduct, even if they share the same Plaintiff, class definition, and legal claims. In the Meta Action, Plaintiff challenges Meta's development of its SAM-3D model, which is integrated into Meta's broader immersive computing ecosystem, including Horizon Worlds and the Meta Quest platform. By contrast, the Roblox Action concerns Roblox's Cube 3D system, which is designed for use within Roblox's gaming and developer ecosystem and is integrated through a Mesh Generation API enabling in-platform asset creation. *Compare* Compl., ECF No. 1, Meta Action (attached hereto as Exhibit A for convenience) ¶¶ 12-14 (describing Meta's Sam 3D AI product) *with* Compl., ECF No. 1, Roblox Action (attached hereto as Exhibit B for convenience) ¶¶ 12-14 (describing Roblox's Cube3D AI product). These are entirely independent technologies developed and trained by separate companies, on different inputs, and for fundamentally different purposes.

Defendant tries to argue that use of "Objaverse-XL-derived 3D models" in both cases makes them related—they are wrong. Objaverse-XL is a publicly available dataset compiled by third parties and used broadly across the industry. *See* Meta Compl. ¶¶ 76–79; Roblox Compl. ¶¶ 76–79. Plaintiff alleges that Defendant used the Objaverse-XL dataset as a tool to identify source works (i.e., 3D Models). *See* Meta Compl. ¶ 112; Roblox Compl. ¶ 112. However, that conduct (i.e., use of Objaverse-XL) is not the basis of Plaintiff's claims. The claims arise from Defendant's

PLAINTIFF'S OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

*subsequent actions*, including what steps Defendant took in rendering and preparing that material for ingestion into its AI model training pipeline. The mere fact that two companies independently referenced or utilized a common upstream dataset does not transform their separate downstream conduct into the same "transaction or event." The statutory violations here arise from each Defendant's independent conduct in obtaining, processing, and incorporating 3D models into their own proprietary AI training pipelines—not that they used Objaverse-XL as a map to that training material. Both complaints allege that each Defendant has its own process for copying, converting, rendering, and ingesting 3D assets into its systems. *Compare* Meta Compl. ¶¶ 12-15, 108-12 *with* Roblox Compl. ¶¶ 12-15, 108-112. Those processes necessarily differ across companies, as they depend on each Defendant's internal infrastructure, engineering decisions, and commercial objectives. There is no allegation that Meta and Roblox shared a common AI training pipeline, coordinated their conduct or practices, or jointly developed or trained any of the AI systems at issue.

Additionally, the fact that both cases present similar legal theories does not force relatedness. Both actions assert claims under 17 U.S.C. § 1202, but liability under that provision turns on highly fact-specific inquiries, including what copyright management information ("CMI") existed, how it was handled, and what each Defendant knew at the time of the alleged removal or alteration. Those inquiries are defendant-specific and will depend on entirely distinct evidentiary records. The fact that the same statute is invoked in both cases does not render the underlying conduct the same.

***Second***, Defendant also fails to satisfy Rule 3-12(a)(2), which requires a showing that proceeding before different judges would result in undue duplication of labor or a meaningful risk of inconsistent results and thus adjudication before a single judge (Judge Breyer currently presiding over the Meta Action) is appropriate.

Defendant's argument on this point boils down to an invitation to designate Judge Breyer as the 3D Modeling AI Copyright Judge for the Northern District of California. But neither Local Rule

3

PLAINTIFF'S OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

3-12 nor sound judicial administrative practice counsel in favor of grouping all applications of a particular technology (i.e., AI ingestion of copyrighted 3D models) before one Judge—especially where, as here, the details of those applications are completely factually unique. *See e.g., ESS Tech., Inc. v. PC-Tel, Inc.*, 2001 WL 1891713, at *6 (N.D. Cal. Nov. 28, 2001) ("Thus, although the three cases all share a common issue regarding the reasonableness of a license proposal, further examination of the pleadings in light of the relevant legal standard shows that resolution of this issue is dependent of a multitude of case-specific facts and issues."). There is no "pixel privacy Judge," and there should be no "3D Modeling AI Judge."[1]

Additionally, no efficiencies are to be gained from relating these cases. There will be no meaningful overlap in discovery as each case will require Defendant-specific evidence concerning the design, development, and operation of unique AI systems. These systems were developed by different companies, using different engineers, different codebases, and different internal processes. As a result, the relevant custodians, documents, and technical evidence will not overlap between the cases in any way. And, as described above, the purported similarity of using the Objaverse-XL related datasets is a false similarity. The complaints make clear that each Defendant used different subsets and implementations *derived from* Objaverse-XL. *See* Meta Compl. ¶¶ 12–13; Roblox Compl. ¶¶ 12–13. Any superficial similarity at the level of "dataset source" quickly disappears once the analysis turns to how those datasets were curated, processed, and incorporated into training pipelines for separate AI products.

As far as the similarity of legal issues, the motion only identifies generalized legal concepts—such as whether preprocessing can constitute "removal" of CMI or whether certain

---

[1] Under Defendant's theory, the Court would also be required to relate *Beaulier v. NVIDIA Corporation*, Case No. 3:26-cv-02647 (N.D. Cal.) ("NVIDIA Action") assigned to Judge Eumi K. Lee, to the Meta Action—a totally unwarranted result given the same factual differences that are outlined here, exist in the NVIDIA Action.

4

metadata qualifies as CMI. Those legal concepts arise in virtually every DMCA § 1202 case. Rule 3-12(a)(2) requires more than the mere existence of overlapping legal theories—it requires a showing that proceeding separately would create inefficiency or inconsistency tied to the same underlying facts. The resolution of the questions presented by Defendant will depend on the specific factual context presented by each Defendant's conduct, including what information was present, how it was handled, and what the Defendant knew. Those facts will materially differ between Meta and Roblox, and thus there is no realistic risk that separate courts will issue conflicting rulings on the same record.

For these reasons, the Court should DENY Defendant's administrative motion.

Dated:  May 4, 2026

/s/ *William J. Edelman*
William J. Edelman (SBN 285177)
**MILBERG, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Tel: (771) 474-1121
wedelman@milberg.com

Michael A. Acciavatti (*pro hac vice*)
**MILBERG, PLLC**
405 East 50th Street
New York, NY 10022
Tel: (212) 594-5300
macciavatti@milberg.com

*Attorneys for Plaintiff and Proposed Class*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED