William J. Edelman (CA Bar No. 285177)
**MILBERG, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA  90212
Tel: (771) 474-1121
wedelman@milberg.com

*Attorney for Plaintiff and Proposed Class*
*(Additional Counsel on Signature Page)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AUSTIN BEAULIER, individually and on behalf of all those similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>        Defendant. | Civil Action No. 3:26-cv-02632-CRB<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: August 28, 2026<br>Time: 10:00 a.m.<br>Courtroom: 6<br>Judge: Hon. Charles R. Breyer |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

LEGAL STANDARD.................................................................................................................. 3

ARGUMENT ............................................................................................................................... 4

    A.   Plaintiff has stated a claim Under Section 1202(b)(1)................................................... 4

       1.   Plaintiff Plausibly Alleges Removal of CMI ..................................................... 4

       2.   Plaintiff Plausibly Alleges Intentional Removal................................................. 6

       3. Plaintiff Plausibly Alleges That Meta Knew or Had Reasonable Grounds to Know the Removal of CMI Would Induce, Enable, Facilitate, or Conceal Infringement.............................................. 8

    B.   Plaintiff Plausibly States a Claim Under Section 1202(b)(3). ....................................... 10

    C.   Any Dismissal Should Be With Leave to Amend. ........................................................ 11

CONCLUSION........................................................................................................................... 12

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 3

*Concord Music Grp., Inc. v. Anthropic PBC*,
   2025 WL 4808984 (N.D. Cal. Oct. 6, 2025) ................................................................... 2, 7, 9

*Doe 1 v. GitHub, Inc.*,
   672 F. Supp. 3d 837 (N.D. Cal. 2023) ............................................................................. passim

*Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*,
   764 F.2d 619 (9th Cir. 1985) ................................................................................................... 4

*GC2 Inc. v. Int'l Game Tech. PLC*,
   255 F. Supp. 3d 812 (N.D. Ill. 2017) ...................................................................................... 5

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
   250 F. Supp. 3d 438 (N.D. Cal. 2017) .................................................................................... 5

*In re Century Aluminum Co. Securities Litigation*,
   729 F.3d 1104 (9th Cir. 2013) ................................................................................................. 5

*Izmo, Inc. v. Roadster, Inc.*,
   2019 WL 13210561 (N.D. Cal. Mar. 26, 2019) ............................................................. 2, 5, 6, 8

*Kadrey v. Meta Platforms, Inc.*,
   2025 WL 744032 (N.D. Cal. Mar. 7, 2025) ........................................................................ 2, 10

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) ................................................................................................. 11

*Logan v. Meta Platforms, Inc.*,
   2023 WL 3668520 (N.D. Cal. May 24, 2023) .................................................................. 1, 7, 8

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ............................................................................................... 11

*Mango v. BuzzFeed, Inc.*,
   970 F.3d 167 (2d Cir. 2020) .............................................................................................. 9, 11

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ................................................................................................. 3

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*McGary v. City of Portland*,
    386 F.3d 1259 (9th Cir. 2004) ........................................................................................... 4

*New York Times Co. v. Microsoft Corp.*,
    777 F. Supp. 3d 283 (S.D.N.Y. 2025) ...................................................................... 2, 7, 10

*Oracle USA, Inc. v. Rimini St., Inc.*,
    879 F.3d 948 (9th Cir. 2018) ........................................................................................... 9

*Robbins v. Oakley, Inc.*,
    2018 WL 5861416 (C.D. Cal. Sept. 27, 2018) ................................................................. 8

*Schneider v. YouTube, LLC*,
    2022 WL 3031212 (N.D. Cal. Aug. 1, 2022) .............................................................. 2, 8, 10

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir.2011) ........................................................................................... 5

*Stevens v. CoreLogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018) ........................................................................................ 2, 8

*The Intercept Media, Inc. v. OpenAI, Inc.*,
    767 F. Supp. 3d 18 (S.D.N.Y. 2025) ............................................................................. 2, 7

*Wareka v. Lucy & Co Beauty LLC*,
    2026 WL 841189 (S.D. Cal. Jan. 22, 2026) ..................................................................... 4

**Statutes**

17 U.S.C. §  1202............................................................................................................. 1

17 U.S.C. § 1202(b) ............................................................................................. 4, 5, 9, 10

17 U.S.C. § 1202(b)(1) ........................................................................................... 1, 4, 12

17 U.S.C. § 1202(b)(3) ................................................................................................ passim

17 U.S.C. § 1202(c) .......................................................................................................... 5

17 U.S.C. § 1202(c)(6).................................................................................................... 9

**Rules**

Fed. R. Civ. P. 8(d)(2)...................................................................................................... 5

Fed. R. Civ. P. 15(a)(2)................................................................................................... 11

iii

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION AND SUMMARY OF ARGUMENT

Meta's motion asks the Court to resolve fact-intensive questions about a proprietary AI-training pipeline on the pleadings. The Complaint plausibly alleges that Plaintiff's and Class Members' 3D works were published with copyright management information ("CMI") identifying the creator, source, title, license terms, attribution requirements, and restrictions on AI training usage; that Meta used Objaverse-derived datasets to locate and obtain those works; that Meta processed the works into AI-training representations that retained their expressive content while severing that CMI; and that Meta then used, distributed, and incorporated those CMI-stripped representations within the training datasets and systems used to develop and deploy SAM-3D and related commercial AI technology. Those allegations state claims under 17 U.S.C. §§ 1202(b)(1) and 1202(b)(3).

*First*, Plaintiff plausibly alleges removal of CMI. Meta's threshold argument rests on a false distinction: § 1202 does not turn on whether Meta labels the alleged stripping of CMI "removal," "failure to preserve," or "omission." The Complaint alleges that Meta obtained 3D works accompanied by creator, source, title, license, attribution, and restrictions on AI training usage information; processed those works into AI-training representations that retained their expressive content; and in that process severed the CMI from the works. That is removal under § 1202. Meta cannot defeat the claim by isolating the phrase "failed to preserve" while ignoring the Complaint's repeated allegations that Meta removed, altered, omitted, or caused the removal of CMI during AI ingestion. And even if Meta's proposed technical line-drawing mattered, Rule 8 permits Plaintiff to plead those theories in the alternative. Finally, the mechanics of Meta's proprietary preprocessing of works for AI training are uniquely within Meta's possession and cannot support dismissal at Rule 12.

*Second*, Plaintiff plausibly alleges intentional removal. Meta argues that intent is lacking because its preprocessing pipeline allegedly operated uniformly. But uniform technical processing does not defeat intent where, as alleged here, Meta knowingly used a pipeline that preserved the expressive value of 3D works while stripping CMI. *Logan v. Meta Platforms, Inc.*, 2023 WL 3668520 (N.D. Cal. May 24, 2023), does not hold otherwise. *Logan* involved a generic thumbnail-cropping function that cropped every photograph to the same small, uniform size and incidentally excluded a visible signature. It did not address

1

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

a system for acquiring works accompanied by rights-management information and transforming them into AI-training representations that retained the works' expressive value while severing that information. Courts have sustained similar intentional-removal allegations based on automated dataset-curation and AI-training processes. *See Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 858–59 (N.D. Cal. 2023); *Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 4808984, at *4–6 (N.D. Cal. Oct. 6, 2025); *New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 314–16 (S.D.N.Y. 2025); *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 29–31 (S.D.N.Y. 2025).

*Third*, Plaintiff plausibly alleges that Meta knew or had reasonable grounds to know that removing CMI would facilitate or conceal infringement. Meta's argument overreads *Stevens v. CoreLogic, Inc.*, 899 F.3d 666 (9th Cir. 2018), by trying to import a summary-judgment evidentiary burden into a Rule 12 motion. At the pleading stage, Plaintiff's allegations explain why the missing CMI mattered: without creator, source, license, attribution, and restrictions on AI training usage information, Meta could use the works in commercial AI training while obscuring the information needed to identify the works, trace them to their creators, determine license restrictions, and assess whether Meta's use was authorized. Courts have found analogous allegations sufficient, including in AI-training cases. *See Izmo, Inc. v. Roadster, Inc.*, 2019 WL 13210561, at *3–4 (N.D. Cal. Mar. 26, 2019); *Schneider v. YouTube, LLC*, 2022 WL 3031212, at *2 (N.D. Cal. Aug. 1, 2022); *Concord*, 2025 WL 4808984, at *4–6; *Kadrey v. Meta Platforms, Inc.*, 2025 WL 744032, at *2 (N.D. Cal. Mar. 7, 2025); *New York Times*, 777 F. Supp. 3d at 315–16.

*Fourth*, Plaintiff plausibly states a § 1202(b)(3) claim. Meta says Plaintiff does not allege distribution because the Complaint does not plead that Meta handed the 3D model files to someone else. But Count II is based on the theory that Meta used, distributed, and incorporated CMI-stripped representations within the training datasets and systems used to develop and deploy its commercial AI technology. At minimum, Meta's competing inferences and technical characterizations raise discovery issues, not grounds for dismissal.

## FACTUAL BACKGROUND

The Complaint alleges that Plaintiff and Class Members are 3D model artists who distributed their original 3D works on public platforms such as Sketchfab, Thingiverse, and Polycam. Compl. ¶¶ 24–29,

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

38–39, 65–68, 79, 92. Those works were published with CMI, including creator identity, work title, attribution requirements, licensing terms, source information, and other terms and conditions governing use. Compl. ¶¶ 38–45, 64–68, 86, 92–93, 141–142. For certain works, the Complaint also alleges that creators used a machine-readable "NoAI" tag to indicate that the works may not be used for AI training or development. Compl. ¶¶ 51–63.

The Complaint further alleges that researchers and technology companies compile pointers to such 3D works into large datasets that function as maps or indexes for users to locate and obtain the underlying works from their original source platforms. Compl. ¶¶ 75–81, 85, 91–95. Objaverse-XL, for example, allegedly aggregates millions of 3D assets while preserving references to original source files, repositories, creator accounts, and related metadata, which constitutes CMI. Compl. ¶¶ 8, 80–81, 85, 93. According to the Complaint, Meta used Objaverse-XL and related datasets to identify and obtain copies of Plaintiff's and Class Members' works. Compl. ¶¶ 87, 91–95, 112, 143.

After obtaining the works, Meta allegedly copied, converted, rendered, and otherwise processed them into machine-learning training representations. Compl. ¶¶ 87, 95–99, 112, 144–145. The Complaint alleges that this process retained the creative content of the works but removed or severed the accompanying CMI. Compl. ¶¶ 87–88, 99–103, 112, 145–150. Meta then allegedly used those CMI-stripped representations to train SAM-3D and other generative AI systems, which Meta integrated into commercial products, developer platforms, and enterprise technologies. Compl. ¶¶ 105–112, 147.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need only plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A plaintiff is not required to plead "detailed factual allegations," nor does Rule 8 demand "heightened fact pleading of specifics." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Instead, the Court must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal is improper where the allegations raise the plaintiff's right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

3

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

That principle has particular force where (as here) a complaint presents a developing or novel legal theory. Rule 12(b)(6) dismissals "are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development." *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004). Courts therefore should allow new legal theories to be "explored and assayed in the light of actual facts rather than a pleader's suppositions." *Id.* (quoting *Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985)).

## ARGUMENT

### A.    Plaintiff has stated a claim Under Section 1202(b)(1).

To state a § 1202(b)(1) claim, a plaintiff must allege: (1) the existence of CMI on the allegedly infringed work, (2) the removal or alteration of that information, (3) that the removal was intentional, and (4) that defendant knew or had reasonable grounds to know that the CMI removal will induce, enable, facilitate, or conceal copyright infringement. *Wareka v. Lucy & Co Beauty LLC*, 2026 WL 841189, at *3 (S.D. Cal. Jan. 22, 2026). At the pleading stage, mental conditions need not be alleged with specificity, a plaintiff need only allege facts supporting a reasonable inference of the required mental state, including whether the removal was intentional and "that the defendant knew or had a reasonable basis to know that the removal or alteration of CMI would aid infringement." *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 858 (N.D. Cal. 2023) (cleaned up).

### 1.    Plaintiff Plausibly Alleges Removal of CMI

Meta's threshold argument that Plaintiff has not actually alleged "removal" of CMI, depends on an artificially narrow reading of both the Complaint and § 1202(b). Meta recasts the pleading as though it alleged only that Meta "failed to preserve" CMI during format conversion. But the Complaint alleges more than that. It alleges that Plaintiff's and Class Members' works were published with creator-identifying information, titles, attribution requirements, licensing terms, source information, restrictions on AI usage through the NoAI tag, and other CMI; that Objaverse-derived datasets preserved source-file, repository, creator-account, and other license metadata; and that Meta then copied, rendered, normalized, voxelized, and otherwise processed those works into training representations that retained the expressive content while removing, altering, omitting, or severing the accompanying CMI. Compl. ¶¶ 38–49, 51–68,

4

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

80–88, 91–104, 112, 141–150. Meta's argument asks the Court to isolate one pleaded description of the same conduct and credit only the non-liability version of events. Rule 8 does not permit that. Rule 8(d)(2) allows a party to "set out 2 or more statements of a claim . . . alternatively or hypothetically," and the pleading "is sufficient if any one of them would be adequate." Fed. R. Civ. P. 8(d)(2).[1]

On the merits, Meta's theory is wrong. Courts reject "unreasonably crabbed" readings of § 1202(b) that would make liability turn on whether CMI was physically embedded in a particular file or whether accompanying CMI was omitted during copying rather than deleted through some separately identified act. *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 821 (N.D. Ill. 2017). In *GC2*, the court held that allegations that defendants copied artwork without including the accompanying copyright notice adequately alleged removal of CMI, explaining that § 1202(c) protects CMI "conveyed in connection with" the work and that the statute does not require the CMI to be embedded in the copied image itself. *Id.* at 821–22. Here, Plaintiff alleges that CMI accompanied the 3D works on their source platform pages, and in the datasets (like Objaverse-XL); that the CMI included source references, repository information, license metadata, attribution information, and NoAI designations; and that Meta's ingestion pipeline separated that CMI from the works. Compl. ¶¶ 51–63, 64–68, 80–88, 92–104, 112, 141–150.

The *Doe 1* and *Izmo* cases explain why Meta cannot defeat the claim at the pleading stage by relabeling the alleged stripping of CMI as passive non-inclusion or technical non-preservation. In *Doe 1*, the defendants argued that the complaint alleged only "passive non-inclusion of CMI" by neutral technology rather than active removal. *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 857–58 (N.D. Cal. 2023). The court rejected that "semantic distinction" as "not meaningful" because the plaintiffs alleged that the defendants trained the programs to ignore or remove CMI. *Id.* at 858. And in *Izmo*, the court denied dismissal of a § 1202 claim involving digital file-name CMI, rejected a narrow view of what digital information can qualify as CMI, and treated disputes over the defendant's knowledge and technical

---

[1] Meta's reliance on *In re Century Aluminum Co. Securities Litigation*, 729 F.3d 1104, 1108 (9th Cir. 2013) and *GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 447 (N.D. Cal. 2017) is also misplaced because Plaintiff's allegations are not "stuck in neutral territory." In fact, a closer reading of *In re Century Aluminum Co. Securities Litigation* demonstrates dismissal is not warranted here: "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, *both of which are plausible,* plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)(citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.2011)).

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

handling of that information as better suited for summary judgment. *Izmo, Inc. v. Roadster, Inc.*, 2019 WL 13210561, at *3–4 (N.D. Cal. Mar. 26, 2019). So too here: Meta's characterization of the alleged stripping as mere technical non-preservation cannot defeat the Complaint's plausible allegations that Meta used Objaverse-derived datasets as a source map to locate 3D works and related creator/license information, then processed the works into AI-training inputs that no longer carried the CMI necessary to identify the creator, source, license terms, attribution requirements, and restrictions governing use for AI training. Compl. ¶¶ 80–88, 91–104, 112, 143–150. If Meta believes there is a legally meaningful distinction between "removal" and "failure to preserve" in the context of its proprietary preprocessing pipeline, that dispute turns on technical details in Meta's control—not on a pleading deficiency in Plaintiff's Complaint. *See Doe 1*, 672 F. Supp. 3d at 851 n.9; *Izmo*, 2019 WL 13210561, at *4.

Meta's contrary framing also misreads paragraph 103 of the Complaint. The allegation that CMI loss was a foreseeable and inherent consequence of Meta's large-scale AI ingestion process explains why Meta had reason to know what its pipeline would do; it does not concede that no removal occurred. Compl. ¶¶ 99–104, 148–150. Nor can Meta defeat the claim by isolating the words "failed to preserve." The Complaint repeatedly alleges that Meta removed, altered, or caused the removal of CMI while converting 3D works into machine-learning inputs. Compl. ¶¶ 15, 62-63, 87–88, 100–104, 107, 112, 145–150. At this stage, those allegations plausibly plead removal or alteration under § 1202(b)(1).

### 2. Plaintiff Plausibly Alleges Intentional Removal.

Meta next argues that Plaintiff has not alleged that its removal of CMI was intentional because Meta's preprocessing pipeline supposedly operated the same way regardless of whether CMI was present. Mot. at 7–9. That argument fails because intent may be inferred from the facts alleged, and Plaintiff alleges more than incidental loss of information during conversion. The Complaint alleges that Meta used Objaverse-derived datasets to locate 3D works and associated source, creator, license, attribution, and NoAI information, then deliberately processed those works into AI-training representations that retained the works' expressive content while severing the accompanying CMI. Compl. ¶¶ 64–68, 80–88, 91–104, 112, 141–150.

6

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The *Doe 1 v. GitHub, Inc.* case is instructive. There, the plaintiffs alleged that CMI routinely appeared in licensed code used to train Codex and Copilot, that defendants knew such CMI appeared in the training data, and that defendants trained the programs to ignore or remove CMI so the programs would no longer reproduce it. 672 F. Supp. 3d at 858–59. The court held those allegations sufficient to support a reasonable inference that defendants "intentionally designed the programs to remove CMI." *Id.* at 858. The same inference is plausible here. Meta allegedly used datasets which preserved source, creator, repository, and license metadata, but then, when Meta processed those works into training inputs, the works no longer carried the CMI necessary to identify the creators, trace the source platforms, and determine the governing license and NoAI tag restrictions. Compl. ¶¶ 8, 53–63, 80–88, 91–104, 112, 143–150.

Other AI-training cases have reached the same result. Courts have sustained § 1202(b) claims where the plaintiff alleged that a defendant selected or used automated tools that separated expressive content from CMI during dataset creation or model training. *See Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 4808984, at *4–6 (N.D. Cal. Oct. 6, 2025) (plausible scienter where defendant allegedly chose extraction tools that removed CMI from training datasets); *New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 314–16 (S.D.N.Y. 2025) (plausible CMI removal where extraction tools allegedly separated expressive content from author, title, copyright notices, and other CMI during training-set creation); *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 29–31 (S.D.N.Y. 2025) (plausible intentional removal where training-set extraction allegedly omitted CMI). Those cases reject the premise that automated processing defeats intent at the pleading stage.

Meta attempts to frame *Logan v. Meta Platforms, Inc.*, 2023 WL 3668520 (N.D. Cal. May 24, 2023), as establishing a rule that CMI removal is never intentional when accomplished through a uniform technical process. Mot. at 8–9. That is not what *Logan* held. *Logan* held only that the complaint there did not plausibly allege intentional removal where Facebook's thumbnailing function cropped every photograph to the same small, uniform size, so anything outside the crop—including the plaintiff's visible signature—was excluded as an "unintended side effect" of generating thumbnails. *Id.* at *6–7.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

This case is different. Plaintiff does not allege that a visible signature at the edge of a photograph was incidentally cropped out in a generic display-formatting step. Plaintiff alleges that Meta used Objaverse-derived datasets to identify and obtain 3D works accompanied by creator, source, license, attribution, and NoAI information, then processed those works into training representations that retained the works' expressive content while severing the accompanying CMI. Compl. ¶¶ 64–68, 80–88, 91–104, 112, 141–150. Unlike the thumbnail crop in *Logan*, where exclusion of material outside the cropped square was the unavoidable byproduct of generating a uniformly sized thumbnail, the Complaint alleges Meta created and implemented a pipeline that kept the expressive value of the works for AI training while omitting the creator, source, license, attribution, and NoAI information that accompanied them. On those allegations, the omission of CMI was not an unavoidable consequence of preserving the works' value for training; it was an avoidable design choice, which supports intentional removal at the pleading stage.

**3.    Plaintiff Plausibly Alleges That Meta Knew or Had Reasonable Grounds to Know the Removal of CMI Would Induce, Enable, Facilitate, or Conceal Infringement.**

Meta next argues that Plaintiff fails to allege that Meta knew or had reasonable grounds to know that removing CMI would induce, enable, facilitate, or conceal infringement. Mot. at 9–10. That argument overreads *Stevens* and asks the Court to impose a summary-judgment evidentiary burden at the pleading stage. *Stevens* held that a plaintiff ultimately must make an "affirmative showing" that CMI removal is connected to likely infringement. *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 674–75 (9th Cir. 2018). But courts in this District have declined to treat *Stevens* as a Rule 12 bar where the complaint alleges facts supporting a plausible inference that the defendant knew removal carried a substantial risk of inducing, enabling, facilitating, or concealing infringement. *See Izmo*, 2019 WL 13210561, at *3–4; *Schneider v. YouTube, LLC*, 2022 WL 3031212, at *2 (N.D. Cal. Aug. 1, 2022); *see also Robbins v. Oakley, Inc.*, 2018 WL 5861416, at *3 (C.D. Cal. Sept. 27, 2018).

The Complaint easily meets that standard. Plaintiff alleges that the works were distributed with CMI identifying the creator, title, source, attribution requirements, license terms, NoAI restrictions, and other use conditions. Compl. ¶¶ 38–49, 51–68, 80–88, 92–93, 141–150. It further alleges that Meta used Objaverse-derived datasets to locate and obtain those works, processed them into AI-training

8

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

representations, and severed the expressive content from the CMI needed to determine who created the works, where they came from, what licenses governed them, and whether AI-training use was permitted. Compl. ¶¶ 80–88, 91–104, 112, 143–150. Those allegations explain why removal of CMI did not merely make infringement harder to detect in the abstract; it allegedly enabled Meta to use the works in commercial AI training while obscuring the information necessary to identify, trace, and police that unauthorized use.

Contrary to Meta's argument, § 1202(b) does not require concealment or facilitation of some later third-party infringement. The statute can be satisfied where the defendant knew or had reason to know that CMI removal would conceal "an infringement," including the defendant's own infringement. *See Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172–73 (2d Cir. 2020). That principle matters here because removal of the CMI at issue here enabled and concealed Meta's own infringement, for example by using the works outside the scope of the license and terms that governed them. CMI expressly includes: "terms and conditions for use of the work[.]" 17 U.S.C. § 1202(c)(6). The Complaint alleges that the works were subject to attribution requirements, noncommercial-use restrictions, share-alike obligations, and NoAI restrictions,[2] and that Meta used the works in commercial AI-training systems without preserving the CMI necessary to identify and comply with any of those conditions. Compl. ¶¶ 3–6, 38–49, 51–63, 79–81, 100–107, 111–112, 141–151. "When a licensee exceeds the scope of the license granted by the copyright holder, the licensee is liable for infringement." *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 954 (9th Cir. 2018), *rev'd on other grounds*, 139 S. Ct. 873 (2019). Those allegations plausibly identify infringement and explain why removal of CMI concealed or facilitated Meta's own infringement.

Recent AI-training cases confirm that these allegations are sufficient. In *Concord Music Group, Inc. v. Anthropic PBC*, the court sustained § 1202(b) allegations where the defendant allegedly used dataset-curation tools that removed CMI and thereby concealed its own unauthorized training use. 2025 WL 4808984, at *4–6 (N.D. Cal. Oct. 6, 2025). The same inference is plausible here. Plaintiff alleges that

---

[2] Plaintiff manually applied the NoAI tag to each of his more than four hundred Sketchfab models in early 2023—a specific, deliberate act expressing that the models could not be used for AI training. Compl. ¶ 123. That restriction was machine-readable, embedded in the HTML metadata of each model's webpage, designed to be detectable by the very kind of automated systems Meta used. Compl. ¶¶ 55–56.

9

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Meta used Objaverse-derived datasets to identify and obtain 3D works accompanied by attribution, source, license, and NoAI CMI; processed those works into CMI-stripped training representations; and then used those representations to train and deploy SAM-3D and related commercial AI systems. Compl. ¶¶ 64–68, 80–88, 92–112, 141–150, 162, 168. On those facts, the alleged CMI removal was part of the same dataset-curation and training process that allegedly enabled Meta's unauthorized use.

The *Kadrey*, *Schneider*, and *New York Times* cases all point the same way. In *Kadrey*, the court held that plaintiffs plausibly alleged that Meta removed CMI to conceal infringement where Meta allegedly knew its model could memorize and output CMI unless CMI was removed and took steps to reduce that risk. *Kadrey v. Meta Platforms, Inc.*, 2025 WL 744032, at *2 (N.D. Cal. Mar. 7, 2025). In *Schneider*, the court held that allegations that YouTube knew uploaded works routinely contained CMI, knew CMI was valuable to copyright owners, and knew that works with missing CMI could facilitate infringement supported a plausible inference of the required scienter. 2022 WL 3031212, at *2. And in *New York Times*, the court held that § 1202(b) is satisfied where CMI removal plausibly conceals the defendant's own alleged infringement. *New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 315–16 (S.D.N.Y. 2025). Plaintiff alleges the same kind of connection here: Meta knew the works it obtained for AI training were accompanied by attribution, source, license, and NoAI CMI, yet processed them into training inputs that no longer preserved that information. Compl. ¶¶ 64–68, 80–88, 92–104, 112, 141–151.

### B.    Plaintiff Plausibly States a Claim Under Section 1202(b)(3).

Plaintiff also plausibly states a claim under § 1202(b)(3). Section 1202(b)(3) prohibits "distribut[ing], import[ing] for distribution, or publicly perform[ing] works, copies of works, or phonorecords, knowing that [CMI] has been removed or altered without authority of the copyright owner or the law," where the defendant knows, or has reasonable grounds to know, that the act "will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b)(3). A plaintiff states a claim by alleging "(1) the existence of CMI in connection with a copyrighted work; (2) that a defendant 'distribute[d] [or] import[ed] for distribution … works [or] copies of works'; (3) while 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) while

10

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

'knowing, or … having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Mango*, 970 F.3d at 171 (quoting 17 U.S.C. § 1202(b)(3)).

The Complaint satisfies those elements. It alleges that Plaintiff's and Class Members' works were originally distributed with CMI, including creator identity, title, attribution requirements, licensing terms, and NoAI restrictions; that Meta used Objaverse-derived datasets to identify and obtain those works; that Meta processed them into machine-learning representations that removed the accompanying CMI; and that Meta thereafter "used, distributed, and incorporated" those CMI-stripped representations within the training datasets used to develop its generative AI systems. Compl. ¶¶ 38–49, 51–68, 80–88, 92–93, 95–104, 105–112, 143–150, 162, 168. That is enough at Rule 12.

Meta's only argument unique to the § 1202(b)(3) claim is that the Complaint pleads no "distribution." Mot. at 11. But Count II is not pleaded on a source-file-transfer theory. It is pleaded on the theory that Meta copied Plaintiff's works, stripped the accompanying CMI during preprocessing, and then used, distributed, and incorporated the resulting CMI-stripped representations in the datasets and systems used to develop and deploy Meta's commercial AI technology. The statute covers distribution of "works" and "copies of works," 17 U.S.C. § 1202(b)(3), and the Complaint alleges that those copied works or representations moved through Meta's training and deployment pipeline into commercial AI systems. Compl. ¶¶ 87–88, 95–107, 111–112, 143–150, 159–168. At the pleading stage, Plaintiff is not required to identify the precise technical form of each copy or each downstream transfer to state a plausible claim.

### C. Any Dismissal Should Be With Leave to Amend.

For the reasons above, Meta's Motion should be denied. But even if the Court concludes that any claim is deficient or allegation should be clarified, dismissal with prejudice would be improper. This is the first complaint, Meta's arguments turn largely on pleading specificity, and any perceived defects could be cured by amendment. *See* Fed. R. Civ. P. 15(a)(2); s*ee also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (leave to amend should be granted unless amendment would be futile); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Plaintiff therefore respectfully requests leave to amend if the Court orders dismissal of any claim.

11

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## CONCLUSION

For these reasons, Plaintiff plausibly states claims under §§ 1202(b)(1) and 1202(b)(3). Therefore, the Court should DENY Meta's Motion.

Date: June 22, 2026                                    Respectfully Submitted,

/s/ William J. Edelman
William J. Edelman (CA Bar No. 285177)
**MILBERG, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA  90212
Tel: (771) 474-1121
wedelman@milberg.com

Michael A. Acciavatti (admitted *pro hac vice*)
**MILBERG, PLLC**
405 East 50th Street
New York, NY 10022
Tel: 212.594.5300
macciavatti@milberg.com

12

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**CERTIFICATE OF SERVICE**

I, William J. Edelman, hereby certify that on June 22, 2026, I caused the foregoing document to be filed with the Clerk of the Court using the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/ECF system to all counsel of record registered to receive electronic service in this action.

/s/ William J. Edelman
William J. Edelman

13
**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**