United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

AUSTIN BEAULIER,
Plaintiff,
v.
META PLATFORMS, INC.,
Defendant.

Case No. 26-cv-02632-CRB

**ORDER GRANTING MOTION TO DISMISS**

This putative class action arises from Meta's alleged use of copyrighted three-dimensional (3D) models to train generative artificial intelligence systems. Plaintiff Austin Beaulier is a professional 3D artist who creates digital models and photogrammetry scans and publishes them on online repositories, including Sketchfab, Thingiverse, and Polycam. Compl. (dkt. 1) ¶¶ 24–27. He brings claims under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b). His theory is that Meta stripped identifying and licensing information from his works while preparing them for use in training Meta's AI models. Id. ¶¶ 1, 15.

For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss, with **LEAVE TO AMEND**.

## I. BACKGROUND

Plaintiff alleges that he is a member of a larger class of individual artists and creators who publish their original 3D models online under Creative Commons licenses, which permit reuse only under stated conditions set on a "work-by-work" or "per-work" basis. Compl. ¶¶ 33–43. Typically, Creative Commons licenses require attribution to the original creator, and in some cases impose restrictions on commercial use of the work or

require that derivative works carry the same license. Id. ¶ 40. Beaulier published more than 400 original 3D models on Sketchfab alone, under the "CC-BY (attribution) Creative Commons" license. Id. ¶ 116. The complaint alleges that the underlying information accompanying these works, including creator identity, title, license terms, and attribution requirements, is copyright management information ("CMI") within the meaning of 17 U.S.C. § 1202(c). Id. ¶¶ 64–67. The complaint separately relies on a Sketchfab feature known as the "NoAI" tag, which allows creators to designate that their work may not be used for AI data collection or model training. Id. ¶¶ 53–57. When a creator applies the NoAI tag to their work, Sketchfab embeds a machine-readable meta tag in the model's webpage conveying that restriction on AI-related uses. Id. Beaulier alleges that he manually applied the NoAI tag to each of his works uploaded onto Sketchfab, and that the tag is CMI under § 1202(c)(6) as a term governing use of the work. Id. ¶¶ 60, 123.

Beaulier's works are alleged to have reached Meta through Objaverse-XL, an academic dataset that indexes more than ten-million 3D assets drawn from public repositories, such as Sketchfab, Thingiverse, and Polycam. Id. ¶¶ 76–78. According to the complaint, Objaverse-XL does not itself store the models, but it preserves references back to the original source files, repositories, and creator accounts, so that an asset can be traced to the creator who published it. Id. ¶ 80. Meta is alleged to have used these references back to the original source files as a "source map" to locate and download the underlying models from the platforms hosting them.[1] Id. ¶ 87. After obtaining copies of the 3D models, Meta processed them through a machine-learning system that converts raw 3D files into training inputs through operations such as format conversion, mesh normalization, rendering, and voxelization, thereby producing numerical or visual representations of the works. Compl. ¶¶ 95–99. According to the complaint, that process preserves the expressive content of the works, including their "geometry, structure, textures, and visual features," while separating them from the attribution, licensing, and

[1] The complaint alleges that Meta has publicly disclosed pretraining on roughly 2.7 million meshes derived from Objaverse-XL. Compl. ¶ 109.

other CMI that previously accompanied them on their source platforms. Id. ¶¶ 99–101, 145. The complaint alleges that, once a 3D work was converted into training inputs, the system could "no longer" identify the creator or honor the governing licensing conditions. Id. ¶ 102. The complaint goes on to state that the separation of content from CMI is a "foreseeable and inherent consequence" of using large-scale datasets to train generative AI systems. Id. ¶ 103. The complaint further alleges that Meta did not maintain a system to track or preserve CMI on a per-work basis through this system, and that no process existed to filter out works whose licenses barred commercial use or use by AI models. Id. ¶¶ 45, 111.

The systems that trained on this data include SAM-3D, which the complaint describes as a tool that generates a three-dimensional reconstruction from a single two-dimensional photograph. Id. ¶¶ 12–13, 108–12. The complaint alleges that Meta uses the CMI-stripped inputs to train systems "capable of producing new 3D objects, environments, and digital assets," which Meta then integrates into commercial products, platforms, and technologies. Id. ¶¶ 105–06.

Beaulier asserts two claims, both under § 1202(b).

***First***, Plaintiff alleges the intentional removal of CMI in violation of § 1202(b)(1). The complaint describes Meta as having "removed, altered, or caused the removal or alteration of CMI" associated with 3D works, including creator attribution, licensing terms, and other identifying information. Compl. ¶ 146. Meta then "incorporated these CMI-stripped representations of Plaintiff's works into the training datasets used to develop its generative artificial intelligence systems." Id. ¶ 147.

***Second***, Plaintiff alleges a violation of § 1202(b)(3), which prohibits anyone from distributing, importing for distribution, or otherwise using CMI-stripped works, "knowing that copyright management information has been removed or altered without authority." Id. ¶ 157. The complaint alleges that Meta "used, distributed, and incorporated, the CMI-stripped representations "within the training datasets" used to develop its systems. Id. ¶ 162.



United States District Court
Northern District of California

Both counts allege that Meta acted with knowledge, or with reason to know, that the removal would induce, enable, facilitate, or conceal infringement of Plaintiff's works. Id. ¶¶ 151, 164.

Meta moves to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

A party may bring a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court accepts factual allegations as true and views them in the light most favorable to the plaintiff, "a formulaic recitation of the elements of a cause of action" and "naked assertion[s]" devoid of further factual backing are insufficient. Id.

## III. DISCUSSION

### A. Removal of Copyright Management Information

Count I alleges that Meta violated Section 1202(b)(1) of the Digital Millennium Copyright Act by intentionally removing CMI accompanying Plaintiff's 3D models when it prepared those works to train its generative systems. The provision states that "[n]o person shall, without the authority of the copyright owner or the law . . . intentionally remove or alter any copyright management information" while "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b)(1). To state a claim, a plaintiff must plausibly allege four elements: (1) the existence of CMI associated with the work; (2) the removal or alteration of that CMI; (3) that the removal or alteration of CMI was intentional; and (4) that the defendant knew, or had reasonable grounds to know, that the removal would induce, enable, facilitate, or conceal infringement. See Stevens v. CoreLogic, Inc., 899

F.3d 666, 673 (9th Cir. 2018); O'Neal v. Sideshow, Inc., 583 F. Supp. 3d 1282, 1286–87 (C.D. Cal. 2022).

The complaint adequately alleges the first, second, and fourth elements, but not the third.

**1. Existence of CMI**

The Court finds that Plaintiff's works were accompanied by CMI. The DMCA defines CMI to include a work's title and identifying information, the author's identity, the copyright owner's identity, and the "[t]erms and conditions for use of the work," when conveyed in connection with copies of the work. 17 U.S.C. § 1202(c)(1)–(3), (6). The complaint alleges that Plaintiff's models were published on certain platforms together with the creator's identity, the title of each work, and the governing Creative Commons license and attribution terms. Compl. ¶¶ 64–68. It further alleges that Plaintiff published more than 400 works under the CC-BY (attribution) license, id. ¶ 116, and that he applied a machine-readable "NoAI" designation to those works to prevent their use in AI training. Id. ¶¶ 53–56, 123. Such a restriction falls comfortably within Section 1202(c)(6)'s reference to "[t]erms and conditions for use of the work."

**2. Removal of CMI**

Meta's principal attack on the second element is that the complaint never actually alleges "removal." Meta urges the Court to take note of the fact that Plaintiff repeatedly describes Meta's conduct in the disjunctive, *i.e.*, that Meta "removed, failed to preserve, or disregarded" the CMI, and that the statute does not prohibit "failure to preserve" or "disregard[ing]" CMI, and that any references to "removal" of CMI are legal conclusions that the Court should not credit. Motion at 5–7. The Court disagrees.

The distinction between affirmative "removal" and "passive non-inclusion" has been rejected at the pleading stage in similar cases. See Doe 1 v. GitHub, Inc., 672 F. Supp. 3d 837, 857–58 (N.D. Cal. 2023). A plaintiff is not ordinarily required to plead the precise mechanisms by which a defendant stripped CMI, because the means by which a defendant handles inputs within its proprietary systems is a matter particularly within the

defendant's knowledge. See Izmo, Inc. v. Roadster, Inc., 2019 WL 13210561, at *3 (N.D. Cal. Mar. 26, 2019) (citing Friedman v. Live Nation Merch., Inc., 833 F.3d 1180, 1189 (9th Cir. 2016)). The complaint adequately alleges that CMI accompanied Plaintiff's works but was absent from the training representations that Meta produced. That suffices to allege the fact of removal at this stage. Whether that removal was intentional is a distinct question to which the Court now turns.

**3. Intentional Removal**

Section 1202(b)(1) reaches only "intentional[]" removals of CMI. The question for the Court is whether Plaintiff has sufficiently pleaded facts supporting the reasonable inference that Meta's removal of CMI was intentional rather than an incidental byproduct of a process undertaken for a different purpose.

On that question, this Court finds its prior decision in Logan v. Meta Platforms, Inc., 2023 WL 3668520 (N.D. Cal. May 24, 2023), applicable. There, the Court held that an "unintended side effect" of a uniform process — namely, the cropping of photos into a thumbnail — rather than a targeted act directed at severing CMI from a work, was not a targeted act sufficient to satisfy the intent requirement for § 1202(b)(1). Id. at *6. The Court contrasted cases in which a defendant removed a watermark indicating the work's owner while leaving the rest of the work intact, which constitutes conduct from which intent could be inferred. Id. at *7. The distinction that Logan drew between a uniform transformation that incidentally sheds CMI and a discrete act that singles out CMI is the distinction on which this claim ultimately turns.

Applying the Logan framework, the complaint's allegations describe an instance of uniform transformation that incidentally sheds CMI. Plaintiff alleges that Meta processed his 3D models through a system that converts raw 3D files into training inputs by means of "format conversion, mesh normalization, rendering, voxelization, and related transformations." Compl. ¶ 145. The purpose of this process, as pleaded, is to render the works usable for training rather than to strip them of CMI. And Plaintiff characterizes the resulting loss of CMI in terms that place it squarely within the "unintended side effect"

United States District Court
Northern District of California

side of the spectrum identified in Logan. Plaintiff alleges that, in converting his works into training inputs, "it is no longer possible for the training system itself to identify the creator of the work," Compl. ¶ 102, and that the "separation between the creative content of a work and the CMI that accompanied it is a foreseeable and inherent consequence of using large-scale creative datasets to train generative artificial intelligence systems." Id. ¶ 103. That allegation belies a claim of intentional removal. An "inherent consequence" of a process is not necessarily one produced by an affirmative decision to eliminate CMI from a particular work. The conversion that Plaintiff describes would appear to operate the same way whether CMI is present or not: it carries forward the "geometry and textures of a 3D model" into a format suitable for training, and does not carry forward the attribution and licensing metadata that the format, as pleaded, simply cannot accommodate. See id. ¶¶ 102–03. Just as the thumbnail crop in Logan, the conversion Plaintiff describes discards everything that is not part of the training signal — including, but not specifically targeting, CMI.

Plaintiff characterizes the conversion as one that "retained the works' expressive content while severing the accompanying CMI." Opp. at 8. But as currently written, the complaint alleges that the training system preserves geometry and texture while omitting metadata as a whole. See Compl. ¶¶ 99–101. Without more, these allegations do not plausibly state a claim that CMI was singled out for removal. As it stands, retaining useful portions of information and discarding the rest is not sufficient to demonstrate intent. And an allegation that separation of CMI is "inherent" in the conversion does not rise to the level of showing that Meta configured the system to scope out and delete CMI that the system could otherwise have preserved.

Plaintiff's related contention that the deletion or loss of CMI was "an avoidable design choice" appears nowhere in the complaint and contradicts the assertion that the loss of CMI was an "inherent" design choice. See Opp. at 8. Plaintiff cannot amend his complaint through the opposition brief — Plaintiff pleaded that separation of CMI was inherent to the system, and the Court credits that allegation at this stage.

Finally, the Court notes that Plaintiff's complaint is materially distinguishable from New York Times Co. v. Microsoft Corp., where the plaintiff alleged that the defendants used specific content-extraction algorithms that were designed to separate an article's main content from its "footers" and "copyright notices," and that the defendants "chose not to extract author and title information" when a viable, information-preserving alternative was available. 777 F. Supp. 3d 283, 314–16 (S.D.N.Y. 2025); see also Concord Music Grp. v. Anthropic PBC, 2025 WL 4808984, at *4 (N.D. Cal. Oct. 6, 2025) (sustaining claim because plaintiffs alleged that defendant chose one extraction tool over another "specifically because it was more effective at removing CMI"). Without alleging a deliberate, CMI-centered choice, rather than a mere byproduct in which CMI is lost, the complaint fails to allege that Meta intentionally removed CMI.

**4. Knowledge or Reasonable Grounds to Know**

Finally, despite the inadequate showing of intentional removal, Plaintiff adequately alleges that Meta knew, or had reasonable grounds to know, that the removal of CMI would enable, facilitate, or conceal infringement. Section 1202(b) requires that the defendant have acted "knowing, or . . . having reasonable grounds to know, that [the removal] will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b). Meta contends that Plaintiff offers only a conclusory assertion that Meta knew that removal would "induce, enable, facilitate, or conceal infringement." Motion at 9–10. This is not the full story. Plaintiff alleges that Meta stripped not only generic identifiers, such as a creator's name or a work's title, but also the license, including attribution, non-commercial, and "NoAI" terms that defined the permitted scope of each work's use. Compl. ¶¶ 40–41, 46–48, 53–60, 116, 123. Such terms are protected CMI, as § 1202(c)(6) reaches the "[t]erms and conditions for use of the work." 17 U.S.C. § 1202(c)(6). Thus, the removed CMI is the very information that marked the boundaries of authorized use, and Plaintiff alleges that its removal thereby enabled Meta to use the works outside those boundaries. Using a copyrighted work beyond the scope of its license falls under the scope of infringement. Oracle USA, Inc. v. Rimini St., Inc., 879 F.3d 948, 954 (9th Cir. 2018).



United States District Court
Northern District of California

United States District Court
Northern District of California

The complaint further alleges that Meta knew the works were distributed with per-work license, attribution, and NoAI terms, Compl. ¶ 148; that Meta did not maintain a system to track or honor those terms on a per-work basis or a process to filter out works whose licenses barred commercial or AI use, id. ¶¶ 44–45, 111; and that, when stripped of that information, Meta could neither identify nor comply with the conditions governing those works, allowing its systems to use them at scale without regard for those conditions. Id. ¶¶ 48–50, 150. Taken as true, those allegations support a reasonable inference that Meta had reasonable grounds to know that removal would enable or facilitate infringement. See Doe 1, 672 F. Supp. 3d at 858–59.

Meta raises additional arguments that are serious challenges to the merits, but they do not reveal a pleading defect. For instance, Meta contends that it would have used the works regardless of whether the license terms traveled with them, so that removal did not actually enable any infringement that would not have occurred anyway. Reply at 5–6. At the pleading stage, Plaintiff's allegation that the absence of per-work CMI made it practicable for Meta to use millions of works without honoring applicable restrictions is a plausible inference, and Meta's competing account may be properly tested on a more developed record. Compl. ¶¶ 44–45, 111.

Accordingly, the fourth element is adequately alleged.

* * *

In summary, Count I is **DISMISSED WITH LEAVE TO AMEND** because Plaintiff failed to plausibly allege the third element of intent.

### B. Distribution of Works

Plaintiff next alleges that Meta violated 17 U.S.C. § 1202(b)(3), which prohibits distributing, importing for distribution, or publicly performing works, copies of works, or phonorecords, knowing that CMI has been removed or altered, while "having reasonable grounds to know, that it will induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b)(3). To succeed on a claim, a plaintiff must allege (1) the existence of CMI in connection with the work; (2) that the defendant distributed the work or copies of the

work; (3) while knowing that CMI had been removed or altered without authority; and (4) while knowing, or having reasonable grounds to know, that the distribution would induce, enable, facilitate, or conceal infringement. Id.; see Mango v. BuzzFeed, Inc., 970 F.3d 167, 171 (2d Cir. 2020).

This claim fails at the second element, and the Court rests its dismissal on that ground alone. Specifically, the complaint does not allege distribution. Courts construe the term "distribute" in § 1202(b)(3) in light of the distribution right in § 106(3) of the Copyright Act, which reaches the transfer of a work "to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3); see New York Times, 777 F. Supp. 3d at 318 ("[C]ourts have understood the term 'distribute' in section 1202(b)(3) to require a 'sale or transfer of ownership extending beyond that of a mere public display[.]'"); Wright v. Miah, 2023 WL 6219435, at *7 (E.D.N.Y. Sept. 7, 2023) ("Section 1202(b) does not define 'distribution,' but courts have interpreted the term as pertaining to a sale or transfer of ownership extending beyond that of a mere public display."). The complaint does not allege such a transfer — it instead alleges that Meta "used, distributed, and incorporated" the CMI-stripped representations of Plaintiff's works "within the training datasets used to develop its generative artificial intelligence systems." Compl. ¶ 162. This allegation concerns internal use, not distribution. The movement of copies within a single enterprise, as alleged by Plaintiff, does not satisfy the transfer that § 1202(b)(3) requires.

Accordingly, the complaint does not state a claim for distribution of works with CMI removed, and Count II is therefore **DISMISSED WITH LEAVE TO AMEND**.

### C. Leave to Amend

Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Dismissal without leave is appropriate, though, where no amendment could cure the deficiency. Generally, leave to amend is granted with "extreme liberality." Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003).

The defect that led to dismissal of Count I is narrow: the complaint adequately

alleges the existence of CMI, the fact of its separation from Plaintiff's works, and Meta's knowledge that removal would enable or facilitate infringement. The single element on which Count I fails is intentional removal — *i.e.*, whether Meta targeted the CMI or merely lost it as an incidental byproduct of conversion. That is a defect that further factual allegations may address.

The Court also grants leave to amend Count II, though the Court reiterates that Count II fails not because certain scienter elements have not been met, but rather because the complaint fails to allege distribution. As discussed above, an amended distribution claim must allege an actual transfer beyond internal use.

## IV. CONCLUSION

For the foregoing reasons, Meta's motion to dismiss is **GRANTED** as to both Counts I and II. Meta's request that dismissal be entered with prejudice is **DENIED**, and Plaintiff is granted **LEAVE TO AMEND**. Any amended complaint shall be filed within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: August 26, 2026

CHARLES R. BREYER
United States District Judge