William J. Edelman (CA Bar No. 285177)
**MILBERG, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel: (771) 474-1121
wedelman@milberg.com

Michael A. Acciavatti (admitted pro hac vice)
**MILBERG, PLLC**
405 East 50th Street
New York, NY 10022
Tel: 212.594.5300
macciavatti@milberg.com

*Attorneys for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

AUSTIN BEAULIER, individually and on behalf of all those similarly situated,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Civil Action No. 3:26-cv-02632-CRB

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: January 29, 2027
Time: 10:00 a.m.
Courtroom: 6 (via Zoom)
Judge: Hon. Charles R. Breyer

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1

II. STATEMENT OF ISSUE TO BE DECIDED ........ 2

III. STATEMENT OF FACTS ........ 2

A. The Court's Order. ........ 2

B. The Amended Allegations. ........ 2

C. Meta's Motion. ........ 4

IV. ARGUMENT ........ 4

A. The Amended Complaint Plausibly Alleges That Meta Intentionally Removed CMI. ........ 4

1. Intent is the only contested element, and it is satisfied by facts supporting a reasonable inference that Meta targeted the CMI rather than lost it as a byproduct of conversion. ........ 4

2. The Amended Complaint alleges that Meta read the works' CMI, retained other per-work metadata, and stripped the CMI from the copies it carried into training. ........ 5

3. Those allegations match the cases the Court identified as sufficient and differ from *Logan* and *Stevens* on the facts that decided those cases. ........ 6

4. Meta's "useful-or-not" argument fails because a deliberate decision to discard the fields identifying creators and licenses is intentional removal regardless of Meta's reason for it. ........ 8

5. The Amended Complaint does not contradict the original complaint, and Meta's cases would not permit dismissal even if it did. ........ 12

B. Dismissal With Prejudice Would Be Improper in Any Event. ........ 14

V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014) ........ 15–16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4, 10, 12

*Beaulier v. Roblox Corp.*,
No. 26-cv-02642-BLF, 2026 WL 2970550 (N.D. Cal. Oct. 2, 2026) ........ 10

*Doe 1 v. GitHub, Inc.*,
672 F. Supp. 3d 837 (N.D. Cal. 2023) ........ 4, 7, 9, 12

*Doe 1 v. GitHub, Inc.*,
191 F.4th 1061 (9th Cir. 2026) ........ 5–6, 9, 11

*Dwarakanath v. Priyanka*,
832 F. Supp. 3d 968 (N.D. Cal. 2026) ........ 15

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ........ 2, 14–16

*Friedman v. Live Nation Merch., Inc.*,
833 F.3d 1180 (9th Cir. 2016) ........ 6

*Hernandez v. Schaad*,
No. 17-cv-04055-HSG, 2017 WL 6731624 (N.D. Cal. Dec. 29, 2017) ........ 14–15

*Huey v. Honeywell, Inc.*,
82 F.3d 327 (9th Cir. 1996) ........ 14

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ........ 10–11

*Intercept Media, Inc. v. OpenAI, Inc.*,
767 F. Supp. 3d 18 (S.D.N.Y. 2025) ........ 7, 12

*Izmo, Inc. v. Roadster, Inc.*,
No. 18-cv-06092-NC, 2019 WL 13210561 (N.D. Cal. Mar. 26, 2019) ........ 4

*Kadrey v. Meta Platforms, Inc.*,
No. 23-cv-03417-VC, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025) ........ 3, 11

*Logan v. Meta Platforms, Inc.*,
636 F. Supp. 3d 1052 (N.D. Cal. 2022) ........ 4, 7

*Logan v. Meta Platforms, Inc.*,
No. 22-cv-01847-CRB, 2023 WL 3668520 (N.D. Cal. May 24, 2023) ........ 5–6, 8

*New York Times Co. v. Microsoft Corp.*,
777 F. Supp. 3d 283 (S.D.N.Y. 2025) ........ 1, 7, 9, 12

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
514 F.3d 856 (9th Cir. 2007) ........ 2, 14–15

*Sicor Ltd. v. Cetus Corp.*,
51 F.3d 848 (9th Cir. 1995) ........ 14

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ........ 1–2, 10

*Stevens v. CoreLogic, Inc.*,
899 F.3d 666 (9th Cir. 2018) ........ 8

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ........ 15–16

**Statutes**

17 U.S.C. § 1202(a) ........ 8

17 U.S.C. § 1202(b)(1) ........ 1–2, 4, 8

**Rules**

Fed. R. Civ. P. 9(b) ........ 4

Fed. R. Civ. P. 11(b)(3) ........ 16

Fed. R. Civ. P. 15(a)(2) ........ 15

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Meta's motion should be denied because the First Amended Complaint pleads the one fact the Court found missing from the original complaint: that Meta's omission of copyright management information ("CMI") from its training data was "a deliberate, CMI-centered choice, rather than a mere byproduct in which CMI is lost." Order Granting Motion to Dismiss (Dkt. 32) ("Order") at 8.

The motion is narrow. The Court has already held that the complaint adequately alleges the existence of CMI, the fact of its removal, and Meta's knowledge that removal would enable or facilitate infringement. Order at 5–6, 8–9. Meta does not revisit those holdings, Mot. at 5 n.2, and the FAC does not replead the § 1202(b)(3) claim. The only question is whether the FAC plausibly alleges that Meta "intentionally" removed CMI. 17 U.S.C. § 1202(b)(1).

It does. The Court dismissed the original complaint because, as the Court read it, it described a format that "simply cannot accommodate" metadata and a process that "would appear to operate the same way whether CMI is present or not." Order at 7. The FAC alleges the opposite. The CMI traveled inside the model files and in the dataset records Meta had to load to obtain the works, and Meta's pipeline read it. FAC ¶¶ 70–71, 92–93, 110. Meta retained other per-work metadata while omitting the fields recording each work's creator, title, license terms, and usage restrictions. The pipeline could have carried those fields forward without meaningful cost or burden. FAC ¶¶ 110, 113–14. A pipeline that reads those fields and strips them while retaining other per-work metadata has singled out CMI. That is the showing the Court identified as sufficient in *New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 314–15 (S.D.N.Y. 2025), and found missing from the original complaint. Order at 6–8. The Court also observed that Plaintiff's opposition had argued the loss of CMI was "an avoidable design choice," but that the contention "appear[ed] nowhere in the complaint" and Plaintiff "cannot amend his complaint through the opposition brief." Order at 7. The FAC pleads that choice and the facts behind it.

Meta's sole response is that it selected fields for engineering usefulness rather than to eliminate CMI, a "useful-or-not" criterion rather than a "CMI-or-not" criterion, so the loss of CMI remains incidental. Mot. at 4. That does not answer the allegations. A decision to discard identified creator and license fields because Meta considered them unnecessary is still a deliberate decision to discard those

fields. Meta's reason for that choice does not make the choice incidental, and its account of its reasons is, at most, a competing inference that cannot be resolved against Plaintiff on a motion to dismiss. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Meta's remaining arguments do not support dismissal. The FAC supplies the facts the Court invited and does not contradict the original complaint, and the Federal Rules would permit the added detail even if it did. *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–60 (9th Cir. 2007). And nothing supports dismissal with prejudice after a single amendment that added substantial new facts directed at the one defect the Court identified. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052–53 (9th Cir. 2003) (per curiam).

## II. STATEMENT OF ISSUE TO BE DECIDED

Whether the First Amended Complaint plausibly alleges that Meta intentionally removed copyright management information in violation of 17 U.S.C. § 1202(b)(1), the only element of Plaintiff's claim that Meta's motion contests.

## III. STATEMENT OF FACTS

### A. The Court's Order.

The Court dismissed the original complaint on a single element. It held that the complaint adequately alleged the existence of CMI, the fact of its removal, and Meta's knowledge that removal would enable or facilitate infringement because the removed license terms "marked the boundaries of authorized use." Order at 5–6, 8–9. The complaint failed only on intent. The Court read its allegation that the separation of CMI was "a foreseeable and inherent consequence" of AI training as describing a conversion that, "as pleaded, simply cannot accommodate" metadata. Order at 7 (quoting Compl. ¶ 103). The Court identified what was missing: facts showing that Meta "configured the system to scope out and delete CMI that the system could otherwise have preserved." Order at 7.

### B. The Amended Allegations.

The FAC alleges that the CMI traveled inside the works and in the records Meta used to obtain them. Sketchfab embeds each work's title, author, author profile URL, license, and source-page URL in the model file's standard "asset" header, and Objaverse-XL indexes each work by source, file identifier,

license, and content hash. Its download software reads those records to retrieve the files. FAC ¶¶ 8, 70–71, 73, 92–93. No format used at any stage of the pipeline is incapable of carrying CMI, and carrying it forward is routine. FAC ¶¶ 72–74.

Meta's pipeline read the CMI in the copies it held and then stripped it from them. Meta's systems parsed the Objaverse-XL annotation records, including the license and source fields, to identify, locate, download, deduplicate, and track the works, and parsed Sketchfab files whose embedded metadata identified each work's title, author, license, and source. FAC ¶ 110. Meta held identical copies of the works, read their CMI, and stripped it as it converted them into training copies. FAC ¶ 111. Meta carried forward the content hashes, file identifiers, and source locations from those same records, added quality scores of its own, and dropped "the adjacent fields recording authorship and license." FAC ¶ 113. The CMI could have stayed where it was "at no cost to the training process," and Meta "stripped them nonetheless," leaving copies "from which the CMI—and only the CMI—was missing." FAC ¶¶ 114, 139.

The FAC also alleges that Meta curated the works individually and tracks provenance when it chooses to. Meta filtered its 2.7 million training meshes one by one and ran a human-annotator "data engine" over millions of candidate meshes, while recording no creator, title, or license for any of them. FAC ¶ 125. Meta distinguished the "licensed" portion of its corpus from the Objaverse-XL portion and honors robots.txt instructions for its web crawler, but neither honored nor preserved the license and NoAI terms conveyed with these works. FAC ¶ 126. The dataset told users to follow each object's license; Meta read the license field to obtain the works and discarded it. FAC ¶ 127.

The FAC also pleads motive and a documented practice. Meta omitted CMI "in part to reduce the traceability of its training data and to conceal the identity and license status of the works it used." FAC ¶ 136. Internal Meta communications filed in *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC (N.D. Cal.), show Meta's data engineers deciding "category by category" what copyright information to strip from training data, describing "an intentional decision to keep" other metadata, and asking whether their choices were applied "consistently across all data sources." FAC ¶¶ 137–38. The FAC alleges that the same corporate practice governed the 3D pipeline, FAC ¶ 138, and disclaims any theory that training "inherently or necessarily severs works from their CMI." FAC ¶ 139.

**C. Meta's Motion.**

Meta moves to dismiss on one ground: that the FAC still does not allege intentional removal, because it describes a "useful-or-not" criterion rather than a "CMI-or-not" criterion and shows only that Meta "could have kept more." Mot. at 1, 3–5. Meta "does not repeat" its earlier challenges to the other elements, Mot. at 5 n.2, and asks that dismissal be with prejudice. Mot. at 5–6.

## IV. ARGUMENT

### A. The Amended Complaint Plausibly Alleges That Meta Intentionally Removed CMI.

#### 1. Intent is the only contested element, and it is satisfied by facts supporting a reasonable inference that Meta targeted the CMI rather than lost it as a byproduct of conversion.

Meta's motion challenges only intent. The Court previously found the other three elements adequately pleaded, and the FAC carries those allegations forward. Order at 5–6, 8–9; FAC ¶¶ 42, 61–74, 95–96, 179–84. A footnote reserving rejected arguments does not place them before the Court. Mot. at 5 n.2. The only question is whether the FAC plausibly alleges that Meta "intentionally" removed CMI. 17 U.S.C. § 1202(b)(1).

A complaint satisfies that element by pleading facts that support a reasonable inference that the removal "was intentional rather than an incidental byproduct of a process undertaken for a different purpose." Order at 6. The Court accepts the FAC's factual allegations as true, views them in the light most favorable to Plaintiff, and asks whether they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Order at 4 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Intent "may be alleged generally." Fed. R. Civ. P. 9(b); *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1063–64 (N.D. Cal. 2022) ("*Logan I*"); *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 858 (N.D. Cal. 2023); *Izmo, Inc. v. Roadster, Inc.*, No. 18-cv-06092-NC, 2019 WL 13210561, at *4 (N.D. Cal. Mar. 26, 2019). A plaintiff need not plead the precise mechanics of a defendant's proprietary systems, which are "particularly within the defendant's knowledge." Order at 5–6.

The line the Court drew runs between an accidental loss and a deliberate act directed at the CMI. In *Logan*, Facebook's thumbnail function cropped every photograph to the same square, and a signature at the edge of the frame was lost with the margin. The Court inferred that the removal "was accidental,

not intentional," because the plaintiff pleaded no facts suggesting the signature was cropped out "intentionally, rather than as an 'unintended side effect' of the creation of the thumbnail." *Logan v. Meta Platforms, Inc.*, No. 22-cv-01847-CRB, 2023 WL 3668520, at *6–7 (N.D. Cal. May 24, 2023) ("*Logan II*") (citation omitted). The Ninth Circuit describes the statute the same way: § 1202(b) protects CMI "from deliberate removal or alteration." *Doe 1 v. GitHub, Inc.*, 191 F.4th 1061, 1066 (9th Cir. 2026) ("*GitHub*").

**2. The Amended Complaint alleges that Meta read the works' CMI, retained other per-work metadata, and stripped the CMI from the copies it carried into training.**

The FAC pleads the facts the Court identified as missing, point by point, and satisfies the Court's distinction between incidental loss and a choice directed at CMI. The Court faulted the original complaint for describing a format that "simply cannot accommodate" metadata; the FAC alleges that the works' own format carries author and license information in a standard header and that no format in the pipeline is incapable of carrying CMI. Order at 7; FAC ¶¶ 71–74. The Court faulted the complaint for describing a process that "would appear to operate the same way whether CMI is present or not"; the FAC alleges that Meta's pipeline "operated on the works' CMI in order to build its training corpus in the first place." Order at 7; FAC ¶ 110.

The FAC also answers the Court's two remaining criticisms. The Court faulted the complaint for alleging that the system "omit[ted] metadata as a whole"; the FAC alleges that Meta maintained per-work records containing content hashes, file identifiers, source locations, and quality or filtering scores for these works and omitted "the adjacent fields recording authorship and license." Order at 7; FAC ¶ 113. And the Court required facts showing that Meta "configured the system to scope out and delete CMI that the system could otherwise have preserved"; the FAC alleges that nothing in Meta's use of the works "required disturbing the file header and metadata in which their CMI resided," that the CMI "could have remained where it was," and that Meta "stripped them nonetheless." Order at 7; FAC ¶ 114.

The FAC alleges the kind of selective removal that *Logan II* and the Ninth Circuit treat as evidence of deliberate removal. In *Logan II*, the Court distinguished a uniform crop, which it concluded was not intentional removal, from removing only a signature and keeping "the rest of the photo intact," from which intentional removal could be inferred. 2023 WL 3668520, at *7. That is what the FAC alleges: Meta

stripped the works' CMI while preserving their geometry, textures, and appearance. FAC ¶¶ 110–12. In *Friedman*, the Ninth Circuit held that a jury could infer removal where the only material difference between the original and the copies was the absence of CMI. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016); *GitHub*, 191 F.4th at 1068–69. The inference is stronger here than in the watermark cases, because the FAC does not rest on the before-and-after comparison alone. It alleges that the pipeline read the specific fields that went missing, used part of what it read, and kept the neighboring fields while stripping the fields that carried CMI. FAC ¶¶ 110–13. That selective treatment supports a reasonable inference of a decision about CMI itself, not merely a decision to undertake a process in which CMI happened to be lost.

The FAC's allegations of curation, provenance tracking, motive, and practice reinforce the inference that Meta's treatment of CMI was a choice. Meta's pipeline made keep-or-discard decisions mesh by mesh. FAC ¶¶ 125, 183. Meta tracks provenance when it elects to, and it read the dataset's license field to obtain the works and then discarded it. FAC ¶¶ 126–27. Meta's data engineers, in a documented discussion about training data, treated the retention or removal of copyright information as a decision and resolved it in favor of removal, FAC ¶¶ 137–38. And the FAC pleads a reason: concealing the identity and license status of the works used. FAC ¶ 136. Taken as true and read together, these allegations make it plausible that Meta's omission of CMI was "a deliberate, CMI-centered choice, rather than a mere byproduct in which CMI is lost." Order at 8.

**3. Those allegations match the cases the Court identified as sufficient and differ from *Logan* and *Stevens* on the facts that decided those cases.**

The FAC alleges what *Doe 1*, on which this Court relied, held sufficient to plead intentional removal: a defendant that knew its training inputs carried CMI and configured its system to strip it. Order at 5, 9. The plaintiffs there alleged that CMI appeared repeatedly in the code used to train Copilot, that the defendants knew it did, and that the defendants then "trained these programs to ignore or remove CMI and therefore stop reproducing it." *Doe 1*, 672 F. Supp. 3d at 857–58. The court rejected the defendants' "passive non-inclusion" distinction as "not meaningful," holding that the plaintiffs had alleged that the defendants "designed 'neutral' programs to effectuate the 'non-inclusion' of CMI by actively removing

it," which supported "a reasonable inference that Defendants intentionally designed the programs to remove CMI." *Id.* at 857–58 & n.16. The FAC alleges that structure with more particularity: Meta knew the works carried CMI because its pipeline read it, and Meta configured its pipeline to strip it from the copies and records it processed. FAC ¶¶ 110, 113–14, 177.

The FAC also pleads the two features the Court found in *New York Times* and missing from the original complaint: a process that separated identified CMI from content, and a choice not to preserve the CMI when an information-preserving alternative was available. Order at 8. The CIR plaintiffs there alleged that OpenAI used extraction tools designed to separate "main article content" from "footers" and "copyright notices," and that OpenAI "chose not to extract author and title information" when using a second tool "because they desired consistency with the Dragnet extractions." 777 F. Supp. 3d at 314–15. The court held that those allegations plausibly alleged intentional removal. *Id.* at 315; *see also Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 29–30 (S.D.N.Y. 2025) (same). The FAC pleads the same field-level choice with more support: the fields were in the files and records Meta's own systems read, Meta kept the fields next to them, and the CMI could have stayed in place or been carried forward in those records. FAC ¶¶ 110–14.

The decisions finding no intentional removal each turned on a fact that is absent here. In *Logan I*, the CMI was not in the photographs but on the Wikimedia page beneath them, and "automatically omitting CMI by embedding a photo out of the full context of the webpage where the CMI is found cannot itself plead intentionality." *Logan I*, 636 F. Supp. 3d at 1064. Here, the CMI was inside the files and the records Meta held. FAC ¶¶ 70–71, 92–93. In *Logan II*, every thumbnail was cropped to the same square and the signature was lost with the margin, so nothing suggested that the signature was cropped out intentionally rather than as an "unintended side effect." *Logan II*, 2023 WL 3668520, at *6–7. Here, the pipeline read the creator and license fields and dropped them while keeping the fields beside them. FAC ¶¶ 110, 113. In *Stevens*, the software could not read or write EXIF metadata, so the metadata was simply "not retained," and the Ninth Circuit did "not consider whether CoreLogic 'intentionally' removed CMI." *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 671–72, 673 n.4 (9th Cir. 2018). Here, the pipeline read the metadata and carried other metadata forward. FAC ¶¶ 110, 112–13.

### 4. Meta's "useful-or-not" argument fails because a deliberate decision to discard the fields identifying creators and licenses is intentional removal regardless of Meta's reason for it.

Meta's one argument is that the FAC describes a selection made for engineering usefulness rather than to eliminate CMI. It contends that the FAC "continues to allege a process whose purpose was to render works usable for training . . . rather than a process whose purpose was to eliminate CMI," so that the allegations are "at most, 'merely consistent with'" intentional removal, the allegations of feasible preservation show only that Meta "could have kept more," and the allegations that Meta "singled out and excised CMI" are "labels." Mot. at 1, 4–5. The argument fails for four reasons.

First, § 1202(b)(1) requires an intentional act of removal, not a purpose to eliminate CMI. The statute reaches one who "intentionally remove[s] or alter[s]" CMI "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b)(1). The adverb "intentionally" modifies the act of removal; the statute addresses the defendant's relationship to infringement separately, through a knowledge element set at "reasonable grounds to know." Where Congress wanted to require a particular purpose, it said so in the adjoining subsection, which reaches only one who acts "knowingly and with the intent to induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a); *see* FAC ¶ 135. Section 1202(b)(1) contains no purpose requirement of any kind. A broader engineering objective can coexist with a deliberate decision to remove CMI.

The decisions applying § 1202(b)(1) ask the same question: whether the removal was deliberate, not why. The question in *Logan* was whether the removal was "accidental" or "intentional," an "unintended side effect" or a "targeted act." *Logan II*, 2023 WL 3668520, at *6–7; Order at 6. The Ninth Circuit's most recent description of the statute, in a decision issued after *Logan*, is to the same effect: § 1202(b) protects CMI "from deliberate removal or alteration," and its verbs "imply taking an affirmative act with respect to CMI connected to a work that already exists." *GitHub*, 191 F.4th at 1066, 1069–70. The inquiry is whether a deliberate act was taken against existing CMI, not why. *Logan* should not be read to add a purpose requirement that the Ninth Circuit's description of the statute does not contain.

An operational reason for excluding CMI does not distinguish this case from the examples the Court identified as sufficient. In *New York Times*, the defendants allegedly declined to extract author and

title information for "consistency" between extraction tools, 777 F. Supp. 3d at 314–15, and in *Doe 1* the plaintiffs alleged that the defendants changed Copilot "to require a minimum file content." 672 F. Supp. 3d at 858. Here, the FAC alleges that Meta declined to retain creator and license fields while retaining other information from the same records. FAC ¶¶ 110–14. In each instance the broader objective was preparing training data; the relevant act was the deliberate exclusion of identified CMI.

The Order's statement that "retaining useful portions of information and discarding the rest is not sufficient to demonstrate intent," Order at 7, does not establish the rule Meta attributes to it. The Court said that about a complaint alleging that the training system "preserves geometry and texture while omitting metadata as a whole." *Id.* A line between a work's content and all of its metadata says nothing about CMI in particular, so it could not show that CMI "was singled out for removal." *Id.* The FAC, however, alleges a line drawn within the metadata, between the fields identifying a work's creator and license and the fields beside them. FAC ¶ 113. In context, what Meta calls "discarding the rest" was a choice about information already present in complete files Meta had downloaded and opened. The FAC alleges that Meta read that information and then chose which fields to carry forward as it prepared copies for training. FAC ¶¶ 110–14.

Meta's own framing of the question concedes that the pipeline made a decision about the CMI fields. Meta says "the question is what criterion was used to select what was retained." Mot. at 5. A pipeline that reads the creator and license fields and excludes them while retaining the fields beside them has made a decision about those fields, whatever the stated criterion, and that decision is intentional removal within the meaning of the statute. The court in the parallel Roblox case reached the same conclusion, rejecting the argument "that intentional removal requires the use or design of a process 'targeted at removing CMI'" and finding that Roblox had not shown that a uniform process "forecloses the possibility that a defendant also bore an intent to remove CMI." *Beaulier v. Roblox Corp.*, No. 26-cv-02642-BLF, 2026 WL 2970550, at *6 (N.D. Cal. Oct. 2, 2026). The FAC identifies the fields Meta read and stripped, the metadata it retained, and how the CMI could have been preserved. FAC ¶¶ 110–14, 139.

Second, competing inferences about Meta's reasons cannot be resolved against Plaintiff on this motion, and the FAC's facts tend to exclude Meta's version. The "obvious alternative explanation"

language Meta invokes, Mot. at 4, applies when the facts alleged are "merely consistent with" liability and an innocent explanation is more likely. *Iqbal*, 556 U.S. at 678, 681–82. "[I]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss," and dismissal is proper "only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr*, 652 F.3d at 1216 (emphasis omitted). The "something more" requirement Meta describes applies where two explanations compete and "only one of which can be true and only one of which results in liability." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). Meta's explanation is not of that kind. A decision to drop the creator and license fields because Meta did not consider them useful is still a decision to drop those fields. Both accounts can be true, and on both the removal was intentional.

Meta's premise that engineering usefulness is "the only reason for such removal [the FAC] supports with factual allegations," Mot. at 4, is also mistaken. The FAC alleges that Meta omitted CMI "in part to reduce the traceability of its training data and to conceal the identity and license status of the works it used," and it supports that allegation with Meta's documented practice of deciding to strip copyright information from training data. FAC ¶¶ 136–38.[1] The motion does not mention those allegations.

Even if Meta's account were an exclusive alternative, the FAC pleads "facts tending to exclude" it. *Century Aluminum*, 729 F.3d at 1108. Plaintiff need not show that the creator and license fields were useful to Meta's training objective; their exclusion was deliberate even if Meta considered them unnecessary. The allegations of feasible preservation answer a different question. The pipeline read the CMI fields, retained other per-work metadata, and could have preserved the CMI "at no cost to the training process." FAC ¶¶ 110–14. The pipeline already filtered works by content hashes, geometric criteria, and aesthetic scores. Had Meta retained each work's license field, the same filters could have used it to flag

[1] The *Kadrey* court held that those plaintiffs "adequately alleged that Meta intentionally removed CMI to conceal copyright infringement," based on Meta's treatment of the CMI in its training data and the other steps it took to keep its models from revealing that they were trained on copyrighted material. *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, 2025 WL 744032, at *2 (N.D. Cal. Mar. 7, 2025). The FAC cites the *Kadrey* record for what it shows about Meta's practice. FAC ¶¶ 137–38.

restricted works. FAC ¶ 183. Together with the motive and practice just described, FAC ¶¶ 136–38, those facts make Meta's account, in which the creator and license fields fell away for want of any use, the less plausible of the two.

Third, Meta's contention that the FAC alleges only that Meta "could have kept more," Mot. at 1, 4, does not describe the pleading. The FAC alleges that the original headers could have been kept intact and, alternatively, that the information could have been carried forward in per-work records Meta was already creating. FAC ¶¶ 113–16. Those options bear on whether the alleged removal was a choice. The FAC alleges that Meta's systems held copies in which the CMI already resided, read it, and stripped it from those copies and their accompanying records as it carried them into training, leaving copies from which "the CMI—and only the CMI—was missing." FAC ¶¶ 110–14, 139. That is the act § 1202(b) describes: "removal or alteration requires taking away or changing attribution information from an existing work." *GitHub*, 191 F.4th at 1068.

Meta's own prior briefing confirms the point. Meta told the Court in the last round that the inference of intentional removal arises when "[t]here was no reason the CMI . . . couldn't have stayed right where it was," and it distinguished *New York Times* and *Intercept Media* because those plaintiffs alleged a choice not inherent in format conversion. Reply in Support of First Motion to Dismiss (Dkt. 30) at 3–5. The FAC alleges precisely that: nothing in rendering a mesh required disturbing the header or the annotation record, and Meta "stripped them nonetheless." FAC ¶ 114.

Meta's reference to "transformed" inputs, Mot. at 4 n.1, mistakes where the FAC places the removal. The FAC alleges that Meta stripped identified fields from existing copies as it prepared them for training, and that the loss of CMI "was not a consequence of any later transformation of the works' content." FAC ¶¶ 110–12, 139. A "discrete act" in that setting can be a field-selection rule that the pipeline applies to each downloaded copy. The operation is identifiable by what it acts on and what it takes away, and it can occur within a larger automated workflow and be repeated across millions of files. The FAC identifies the incoming copies, the fields the pipeline allegedly read and stripped, and the resulting copies. That is enough to plead the act even though the precise implementation is within Meta's control. Order at 5–7 (citing *Doe 1*, 672 F. Supp. 3d at 857–58); FAC ¶ 132.

Fourth, Meta's "labels" argument, and its invocation of *Iqbal*'s warning against a plaintiff "armed with nothing more than conclusions," Mot. at 1, 5 (quoting 556 U.S. at 678–79), do not engage the FAC. The words Meta quotes, "singled out," "excised," and "deliberate design," appear in FAC ¶¶ 133 and 177 as summaries of facts pleaded elsewhere: what CMI existed and where, what the pipeline read, what it kept and what it dropped, why the formats permitted preservation, how the works were curated, and what Meta's engineers decided when the question was documented. FAC ¶¶ 70–74, 92–93, 110, 113–14, 125–26, 137–38.

Meta's assertion that the FAC rests on "the same published description of SAM 3D" as the original complaint, Mot. at 5, is likewise incorrect. The FAC identifies seven categories of sources beyond that report, FAC ¶ 132, and it reads the report for facts the original complaint never pleaded, including per-mesh curation and the absence of any license-based exclusion criterion. FAC ¶¶ 124–26. Meta's characterization does not account for these allegations, and its motion does not address them.

**5. The Amended Complaint does not contradict the original complaint, and Meta's cases would not permit dismissal even if it did.**

The FAC does not contradict the original complaint; it adds the detail the Court asked for about a process both pleadings describe the same way. Meta argues that the FAC contradicts the original complaint's statement that the separation of CMI was "a foreseeable and inherent consequence" of AI training. Mot. at 1, 3, 5. But both pleadings allege the same sequence: Meta obtained copies of the works with their CMI, ran them through Meta's preprocessing pipelines, preserved the works' geometry and textures while the CMI was "removed, failed to be preserved, or otherwise disregarded," maintained no per-work attribution or license mechanism, and knew its pipelines would separate the works from their CMI. Compl. ¶¶ 95–104, 111–12; FAC ¶¶ 108–17.

The sentence Meta quotes was not a concession that CMI loss is unavoidable. It supplied the basis for the knowledge allegation that follows it, Compl. ¶¶ 103–04, and it described what Meta's pipelines, as built, do with the works they process: strip them to the components training uses. It did not allege that no training pipeline could carry CMI. The Court read the sentence more broadly, as describing a conversion that "simply cannot accommodate" metadata, Order at 7, and the FAC removes that ambiguity.

Paragraph 139 makes clear that machine learning can proceed with the CMI preserved. The FAC identifies two ways Meta could have done so: leave the existing headers intact or carry the CMI in the per-work records Meta already maintained. FAC ¶¶ 113–16, 139. Those alternatives support an inference of intent because Meta allegedly read the information, kept other fields, and chose to strip the CMI even though the process could accommodate it.

The FAC's new allegations are additions, not reversals. They specify which fields Meta's pipeline read, which it kept, which it dropped, and why dropping them was avoidable. FAC ¶¶ 110–14. Those are facts about the inner workings of Meta's pipeline, which a plaintiff is not required to plead with precision at the outset because they are "particularly within the defendant's knowledge," Order at 5–6, and the FAC pleads them now because the Court identified them as the facts that matter. Order at 7–8, 11. They rest on further investigation of the model files, dataset records, technical specifications, and download tools, which show where the CMI resided and support the inference that Meta's pipeline read it. FAC ¶ 132.

Even if the Court saw tension between the two pleadings, nothing in the Federal Rules would penalize the FAC for it. The Court evaluates the FAC as the operative pleading. Rule 15 permits Plaintiff to add facts developed through further investigation and to address the deficiencies identified in the dismissal order. An amended complaint supersedes the original, and an allegation in the original complaint no longer binds the plaintiff as a conclusive judicial admission. *See Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996). The Ninth Circuit has held that "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations," adding: "We do not call this process sham pleading; we call it litigation." *PAE*, 514 F.3d at 859–60. Where a party explains the shift by amendment, "the trial court must accord the explanation due weight." *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir. 1995). The FAC's explanation is on its face: the original complaint described the result of Meta's pipeline in general terms, the Court asked for the particulars, and the FAC supplies them from identified sources. FAC ¶¶ 72–74, 110–14, 132.

Meta's argument also proves too much, because it would mean the Court granted leave to amend a defect that no amendment could cure. The Court held that the intent defect was one "that further factual allegations may address" and denied dismissal with prejudice. Order at 11. On Meta's view, any allegation

that Meta chose to drop the creator and license fields is foreclosed by the original complaint. The order expressly left room for additional facts showing a deliberate choice. *See Eminence*, 316 F.3d at 1052 (dismissal without leave proper only where "the complaint could not be saved by amendment"). Meta's motion supplies no basis to revisit that conclusion.

Meta's authorities do not hold otherwise. The first, *Hernandez v. Schaad*, No. 17-cv-04055-HSG, 2017 WL 6731624 (N.D. Cal. Dec. 29, 2017), arose in a pro se prisoner case. The court noted that Ninth Circuit precedent is "inconsistent as to whether amended pleadings may ever contradict earlier allegations," and that a court may consider prior allegations in light of the circumstances of the case. *Id.* at *3. That context supports the FAC here, because both pleadings describe the same sequence and the original complaint already alleged that Meta kept no per-work record of the works' license terms. Order at 3, 9 (citing Compl. ¶¶ 45, 111).

Meta's other case, *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Management, Inc.*, 744 F.3d 595 (9th Cir. 2014), addressed futility after an express appellate concession about the trademark owner's own use of the mark. The Ninth Circuit affirmed the denial of leave to amend as futile where the plaintiff had "acknowledge[d]" in its appellate briefing that its predecessor "was not actively using the marks" during the relevant period, a concession no amendment could undo. *Id.* at 600. Courts in this District read *Airs Aromatics* to govern only allegations that are "directly and irreconcilably inconsistent" in that sense, and otherwise apply *PAE. Dwarakanath v. Priyanka*, 832 F. Supp. 3d 968, 975–76 (N.D. Cal. 2026). Here, the earlier sentence was a general description of how Meta's internal pipeline operated. The FAC, filed with leave, explains how the pipeline allegedly produced that result using details drawn from identified sources. FAC ¶¶ 110–14, 132. *Airs Aromatics* supplies no basis to disregard those allegations.

**B. Dismissal With Prejudice Would Be Improper in Any Event.**

If the Court concludes that any aspect of the intent allegations requires further detail, dismissal should be without prejudice, because leave to amend is freely given and nothing shows that amendment would be futile. "The court should freely give leave when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), a policy the Ninth Circuit applies liberally and "[a]bsent prejudice, or a strong showing of any of the

remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence*, 316 F.3d at 1051–52. Prejudice "carries the greatest weight," and Meta identifies none. *Id.* at 1052. Dismissal with prejudice is appropriate only where it is "clear on de novo review that the complaint could not be saved by amendment." *Id.*

Meta's authorities involved plaintiffs who had failed to cure after repeated opportunities or had conceded facts fatal to their claims. In *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009), the plaintiff filed a second amended complaint under the PSLRA's heightened scienter standard that "failed to correct" the deficiencies identified in the dismissal of the first amended complaint, which supported the inference that the plaintiff had no further facts to plead. *Id.* at 1007. Plaintiff has amended once, under Rule 8, and the amendment added substantial new facts directed at the single defect the Court identified. Order at 10–11. The Ninth Circuit has reversed dismissals with prejudice in that situation, where the amended pleading reflected "good faith" efforts "to comply with court guidance" and "a reasonable chance of successfully stating a claim." *Eminence*, 316 F.3d at 1053.

Meta's remaining futility arguments fail for the same reasons. The decision in *Airs Aromatics*, addressed above, concerned an express appellate concession about the trademark owner's own use of the mark. And Meta's suggestion that Plaintiff could not plead intentional removal "consistent with Rule 11," Mot. at 6, overlooks that the FAC's allegations rest on identified public sources and counsel's examination of the files and records at issue, while Meta's pipeline configuration remains in Meta's exclusive possession. FAC ¶ 132. Rule 11 expressly permits specifically identified factual contentions that, after reasonable inquiry, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(3).

## V. CONCLUSION

The Court should deny Meta's motion to dismiss the First Amended Complaint. If the Court dismisses any part of Count I, it should do so with leave to amend.

Date: November 24, 2026

Respectfully Submitted,

*/s/ William J. Edelman*
William J. Edelman (CA Bar No. 285177)
**MILBERG, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel: (771) 474-1121
wedelman@milberg.com

Michael A. Acciavatti (admitted *pro hac vice*)
**MILBERG, PLLC**
405 East 50th Street
New York, NY 10022
Tel: 212.594.5300
macciavatti@milberg.com

## CERTIFICATE OF SERVICE

I, William J. Edelman, hereby certify that on November 24, 2026, I caused the foregoing document to be filed with the Clerk of the Court using the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/ECF system to all counsel of record registered to receive electronic service in this action.

*/s/ William J. Edelman*
William J. Edelman